CHARLES P. STILLMAN

*v.*

FANNIE H. STILLMAN.

*Filed at Ottawa May 14, 1881.*

1. PRACTICE—*findings of Appellate Court in chancery cases not conclusive.* The finding of facts by the Appellate Court in a suit in equity is not conclusive on the Supreme Court. In all chancery cases this court may look into the record, and ascertain what facts are established by the evidence.

2. ALIMONY—*discretion as to changing, subject to review.* Although the statute has vested courts granting divorces with large discretion in respect to the allowance of alimony, and in the making of such alterations concerning the same as shall appear to be reasonable and proper, it is a judicial discretion subject to review in an appellate court, so as to prevent any abuse in its exercise.

3. SAME—*subsequent marriage of divorced wife.* It would seem that where, for any cause, the alimony decreed becomes unnecessary for the support of the wife, or where circumstances transpire that make it inequitable that she

should have further allowance, it would be proper for the court to absolve the husband from the burdens imposed by the decree, and the subsequent marriage of the divorced wife is reasonable and proper cause for suspending further payment of the same.

4. SAME—*modifying alimony.* Where the circuit court reduces the alimony to be paid to a divorced wife on the ground of her subsequent marriage, there will be no error in not making the decree retroactive.

5. SAME—*attorney's fee on motion to reduce.* The allowance of an attorney's fee to a divorced wife for resisting a motion to reduce her alimony is within the power conferred by the statute, and if reasonable, it will not be disturbed on appeal, although the ground of the motion was the subsequent marriage of the wife which deprived her of further right to alimony.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. A. T. GALT, for the appellant:

If a divorced wife marries again, she voluntarily furnishes ground for absolving her former husband from paying her alimony, or at least for its reduction.   Citing *Albee* v. *Wyman,* 10 Gray, 222; *Bowman* v. *Worthington,* 24 Ark. 522; *Fisher* v. *Fisher,* 2 Swab. & T. 410; *Sidney* v. *Sidney,* 4 id. 178; *Bankston* v. *Bankston,* 27 Miss. (5 Cush.) 692; 2 Bish. on Mar. & Div. (5th ed.) 479.

The court erred in not making the reduction in the alimony take effect from the marriage of appellee, and also in allowing her a solicitor's fee.

Mr. JOSEPH WRIGHT, for the appellee, after noticing the authorities cited by appellant, referred to the following cases as opposing the reduction of alimony for the wife's subsequent marriage: *Forrest* v. *Forrest,* 3 Bosw. 661; *Shephard* v. *Shephard,* 3 N. Y. Sup. Ct. Rep. 715; 1 Hun, 240.

As to allowing the divorced wife a solicitor's fee, see *Helden* v. *Helden,* 9 Wis. 557; *same* v. *same,* 11 id. 558; *Jenkins* v. *Jenkins,* 91 Ill. 167.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On the 9th day of July, 1877, Fannie H. Stillman obtained a divorce from her husband, Charles P. Stillman, on bill filed in the circuit court of Cook county, where the parties resided. The decree rendered made it obligatory on defendant to pay complainant $60 per month as alimony. That sum was regularly paid to complainant up to the 1st day of February, 1880. On the 14th day of January, 1880, complainant married Frank Eldridge, with whom she has ever since lived as his wife. At the March term, 1880, of the circuit court in which the divorce proceedings were had, defendant appeared and entered a motion to amend the decree so as to exempt him from further payment of alimony, or to decrease the amount fixed by the decree. An affidavit of defendant sets forth, as the grounds of the motion: first, a material decrease in the amount of his income since the rendering of the decree, and financial embarrassment occasioned by incumbrances upon his property; and, second, the subsequent marriage of complainant. Complainant resisted the motion, and filed her own affidavit, in which she stated, first, facts tending to show the financial ability of defendant to continue to pay the alimony awarded her by the original decree, and, second, that the income of her present husband, after discharging other obligations resting upon him, is insufficient to afford her an adequate support. On the hearing of the motion the court made an order modifying the original decree in such manner as to absolve defendant from further payment of the alimony ordered by the original decree, and in lieu thereof it was decreed defendant, from that date, should pay complainant one dollar annually, to be paid at the end of each year. A counsel fee was allowed complainant to resist the motion to reduce her alimony.

An appeal was taken by complainant from that decree to the Appellate Court for the First District. The errors assigned call in question the correctness of the judgment of the circuit

court in amending the original decree in respect to the ali-
mony allowed, and in reducing it to a nominal sum.   Cross--
errors were assigned : first, as to the allowance of a solicitor's
fee to the party resisting the motion, and, second, in not
making such decree retroactive, so as to suspend the payment
of alimony after the 1st day of February, 1880, on account
of the previous marriage of complainant.   The Appellate
Court reversed so much of the order of the circuit court as
absolved defendant thereafter from paying alimony as required
by the original decree, and giving complainant in lieu thereof
one dollar a year, but in other respects affirmed the order or
decree of the circuit court.   An appeal was granted to defend-
ant on a single question, viz: whether the subsequent
marriage of complainant, *ipso facto*, entitled defendant to have
the alimony provided in the original decree reduced to a
nominal sum, complainant's husband being unable to pro-
vide her with a suitable support, and defendant being able to
pay the amount fixed in the original decree—the court being
of opinion such question is involved in this case, and is of
such importance on account of principal and collateral inter-
est, that it should be passed upon by the Supreme Court.

The Appellate Court, by its judgment, assumed to find
certain facts: first, that defendant is the owner of a large
estate derived from his father, who is deceased, and has
means out of which he might comply with the original
decree as to alimony; and, second, that since the rendering
of the original decree, complainant, on January 14, 1880,
married a man by the name of Eldridge, who works upon
a salary of $75 per month, out of which he has to sup-
port an aged mother, and that he is unable to support
complainant.   It will be observed this is not a case where
the finding of facts by the Appellate Court, although em-
bodied in and made a part of its judgment, is conclusive on
the Supreme Court.   The Practice act has not so provided.
In all chancery cases this court may look into the record and
ascertain what facts are established by the evidence.   The

rule as to the practice in such cases has been settled by repeated decisions of this court.·

On looking into the record it is seen the testimony concerning disputed facts is contained in *ex parte* affidavits—a most unsatisfactory mode of eliciting the truth as to any question of fact. It is shown, defendant's income is now much less than when the alimony was fixed by the original decree, and that his property is so heavily incumbered as to cause great financial embarrassment. It is admitted the income of complainant's husband is $75 per month, but it is not proven that sum is not sufficient to enable him to afford her a suitable support, considering the social position she occupies. It certainly can not be declared, as a fact generally known, that it is not., It may, therefore, be assumed, for the purposes of the decision of the question involved, as the same is certified to this court, that defendant is able to pay the alimony provided in the original decree, and that complainant's husband is able to afford her a reasonable support, every way suitable and corresponding with the position the parties occupy in social life.

The question presented has not before arisen in this State, and the court is left free to determine it as one of first impression, by the aid of such discussion as may have been given to it by other courts whose judgments are entitled to respect. The jurisdiction of the court to grant the relief sought is expressly conferred by statute, which provides, the court in which any divorce is decreed may make such order touching alimony and maintenance of the wife as, from the circumstances of the parties and the nature of the case, shall be fit, reasonable and just, and may on application, from time to time, make such alterations in the allowance of alimony and maintenance as shall appear reasonable and proper. Although our statute vests courts granting divorces with large discretion in respect to the allowance of alimony, and in the making of such alterations concerning the same as shall appear to be reasonable and proper, it is understood to be

a judicial discretion, subject to review in an appellate court, so that there may be no abuse of that discretion with which courts are clothed in such matters, and to the end that justice may be done. The circuit court was of opinion the subsequent marriage of complainant so changed the relations of the parties as to make it reasonable and proper to reduce the alimony granted by the original decree to a nominal sum, and so decreed. That decision finds sanction in considerations that affect vitally the best interests of society, and conserve a sound public policy.

Alimony is that allowance which is made to a woman on a decree of divorce for her support out of the estate of her husband. At common law it was usually settled at the discretion of the ecclesiastical judge, on consideration of all the circumstances of the case. The practice in our courts follows closely the practice in the English courts in that respect. Underlying all rules of practice to which long usage has given the consistence of law, may be found some reason that satisfies the common judgment of their justness. Accordingly it is found the principle on which alimony is given to the divorced wife is,—it is the equivalent of that obligation implied in every marriage contract,—the husband shall furnish his wife what shall be deemed a suitable support, corresponding in degree with his pecuniary ability and social standing, and from any further performance of his marital obligation in that regard he is absolved by the decree of divorce. Our statute is silent as to when and for what cause the husband may be relieved from further payment of alimony imposed by the decree. In the absence of legislation, the question remains for the decision of the courts. Of course the decease of the beneficiary operates to suspend all further payment of alimony. It is for the obvious reason it is no longer necessary for her support. The personal representatives were never permitted to recover any portion of the sum decreed, except such sum or installment thereof as had become payable in her lifetime, and which remained

unpaid at her death. Reasoning from analogy, it would seem that when, for any cause, the alimony decreed becomes unnecessary for the support of the wife, or when circumstances transpire that make it inequitable she should have further allowance, it would be reasonable and proper for the court to absolve the husband from the burdens imposed by the decree. This the court has ample power to do under our statute.

It would be difficult to suggest or conceive any cause that would present grounds more "reasonable and proper" for suspending further payment of alimony than the subsequent marriage of the divorced wife. The impression made by the doctrine of the common law, that by marriage husband and wife are one person in law, has not been entirely removed from the mind by modern legislation. The obligation implied in the marital relation resting on the husband to support his wife, remains, having all the binding efficacy it had at common law. Courts of equity will be slow to change that obligation in any case from the husband to another man, although he may once have been the husband of the wife. Aside from its positive unseemliness, such a policy finds no support in any equitable consideration. Treating alimony, as may be done, as the equivalent of that obligation for support which arises in favor of the wife out of the marriage contract, and which is lost when that contract is annulled by the decree, she obtains the same obligation for support by a second marriage. It is unreasonable that she should have the equivalent of an obligation for support by way of alimony from a former husband, and an obligation from a present husband for an adequate support at the same time. It is illogical as well as unreasonable. It is her privilege to abandon the provision the decree of the court made for her support under the sanctions of the law, for another provision for maintenance which she would obtain by a second marriage, and when she has done so the law will require her to abide her election. There is no reason why she should not

do so. Conforming closely with this view of the law are the following cases, in which questions analogous with the one involved were considered: *Albee* v. *Wyman,* 10 Gray, 222; *Bowman* v. *Worthington,* 24 Ark. 522.

All the cases referred to as holding doctrines contrary to the views here expressed, have been carefully examined. It is not perceived that any of them are directly in point, unless it is *Shephard* v. *Shephard,* 1 Hun, (N. Y.) 241. The reasoning of the court in that case, on the question involved in this decision, is neither conclusive nor satisfactory.

*Forrest* v. *Forrest,* 3 Bosw. 661, is upon a question that does not come within the range of this discussion, nor was the effect of a subsequent marriage of the wife upon her alimony discussed when the *Forrest case* was before the Court of Appeals, 25 N. Y. 501.

*Miller* v. *Clark,* 23 Ind. 870, holds that arrears of alimony decreed by a court in favor of a divorced wife, under the statutes of that State, may be collected after her death by her administrator. Exactly the same question was considered by this court in *Dinet* v. *Eigenmann,* 80 Ill. 274, and the same conclusion reached.

*Perkins* v. *Perkins,* 12 Mich. 456, holds that the section of the statute of that State which provides that after decree for alimony the court may, from time to time, on the petition of either party, revise and alter such decree, must be construed as only authorizing the change on new facts thereafter transpiring, which are of such a character as to make the change necessary to suit such new state of facts; and in so far as that case can have any possible application to the case in hand, it is fully indorsed.

It is said, the policy of the law favors rather than restrains marriage, and the suggestion of counsel is, if the subsequent marriage of the wife shall be held to suspend the further payment of alimony by the former husband, it is in restraint of marriage, which is forbidden. It is not perceived there is any force in the argument on this branch of the case. Pen-

sion laws suspending further payments to widows, on account of subsequent marriage, have existed many years, and no suggestion was ever made they operated in restraint of marriage, nor is it understood how such laws could have any such effect. Pensions are no doubt granted under the belief they furnish, in some degree at least, that support which it is supposed the husband would have rendered to the wife if living, and which is lost to her by his death. On her subsequent marriage, she simply abandons the provision which the law humanely made for her, for a support which she has a right to expect she will receive from her second husband. That is precisely the case as to alimony. The divorced wife abandons the provision made for her support out of the estate of her former husband by the decree of the court, for that adequate support which she contracts for by the subsequent marriage. It is a matter that affects her own happiness, and about which she is perfectly free and competent to make a choice. Whether she acts wisely in her election, or whether in every instance she obtains as good or as adequate a support by her marriage as that which she abandoned, are questions about which courts can have no concern. It is a matter of her own voluntary election.

There was no error in the circuit court in refusing to make its decree retroactive, so as to cut off alimony that had previously accrued. As respects the allowance of counsel fees to complainant, in resisting the motion for the reduction of her alimony, the court acted within powers conferred by the statute, and the fees allowed are not unreasonably high.

The judgment of the Appellate Court will be reversed, and the cause remanded, with directions to that court to affirm the decree of the circuit court in all things.

*Judgment reversed.*